IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JEANNINE L. OLCOTT,
        Plaintiff,

vs.                                                          No. 19-2717-JTM

QUIKTRIP CORPORATION,
        Defendant.

MEMORANDUM AND ORDER

Plaintiff Jeannine Olcott alleges she was injured when she slipped and fell at an Overland Park, Kansas QuikTrip convenience store. She alleges that the accident happened while she was using an air compressor at the store to inflate her car tires. She contends that she fell because the curbs near the compressor are different heights.

In Olcott's original state court Petition, which QuikTrip removed to this court, she alleged two separate claims for relief: Count 1, alleging standard premises liability, and Count 2, alleging "Mode of Operations" liability. QuikTrip has moved to dismiss the latter claim, and Olcott has moved to submit an amended complaint, which modifies (but does not completely abandon) mode of operations language, and adds a claim for punitive damages.[1]

---

[1] QuikTrip does not oppose the amendment to the extent it would assert a claim for punitive damages, but otherwise opposes the amendment as futile.

The court will grant the motion to dismiss. Under the mode of operations theory the foreseeable actions of third parties serve as a substitute for the ordinary premises liability requirement that the owner had actual or constructive knowledge of the dangerous condition. The theory is applicable when the defendant adopts a "mode of operations where a patron's carelessness should be anticipated; and 2) the proprietor fail[ed] to use reasonable measures commensurate with the risk involved to discover the condition and remove it." *Jackson v. K–Mart Corp.*, 251 Kan. 700, 840 P.2d 463, 465 (1992). Here, QuikTrip has moved to dismiss the plaintiff's mode of operations claim because the cause of injury — a difference in curb heights around the air compressor — did not arise through any third party action. Rather, the plaintiff's claim is a garden-variety slip and fall, and thus requires proof the defendant had some knowledge of the dangerous condition.

The plaintiff fails to address any of the authorities cited by defendant, except to unpersuasively distinguish one case, *Wagoner v. Dollar General Corp.*, 955 F.Supp.2d 1220 (D. Kan. 2013), where the court rejected a similar "mode of operations" theory of liability, based up the contention that a retail establishment failed to prevent a fall by using floor mats which were "flimsy and thus easily flipped up" by other customers:

> Plaintiff's attempt to establish a mode of operation is misplaced. Use of the mat is not a specific method in which the business conducts itself, that, is, the nature of the business establishment. Plaintiff has offered no evidence regarding Defendants' operation, policies, customs or practices that could amount to a mode of operation. Plaintiff does not allege, for example, that the self-service mode of operation created by Defendants in selling retail merchandise somehow created a foreseeable risk of danger, including

> tripping and falling on a rug. Indeed, by asserting that Defendants failed to adopt a mode of operation for dealing with foreseeable risks created by patrons, Plaintiff appears to conflate the mode of operation element with reasonable measures to discover and remove dangerous conditions, such as adoption of a safety inspection system.

(Citation omitted).

Here, the plaintiff emphasizes that the air compressor on the scene was indeed self-service. However, while the relevant cases "generally limit the mode of operation doctrine to self-service operations," *Wagoner*, 955 F.Supp.2d at 1225 n. 27 (citing cases), this does not mean that *all* self-service business, merely by that fact alone, are automatically subject to mode of operations liability.

That is, under the caselaw customer self-service is a necessary but not sufficient condition for mode of operations liability.[2] As noted earlier, the theory is applicable only where the dangerous condition is caused by foreseeable third party action, which is simply not the case here. And the plaintiff wholly ignores other Kansas cases emphasizing the restricted nature of the doctrine out of concern that it would otherwise wholly displace standard premises liability rules:

> The mode of operation rule is of limited application because nearly every business enterprise produces some risk of customer interference. If the mode of operation rule applied whenever customer interference was conceivable, the rule would engulf the remainder of negligence law. A

---

[2] As *Wagoner* itself stressed: "[t]he nature of such [self-service] businesses, where shoppers are encouraged to obtain the items they wish to purchase from shelves and containers and move them from one part of the store to another, creates a 'reasonable probability that these [slip and fall] risks will occur.'" Wagoner 955 F.Supp.2d at 1225 (citing *Sheehan v. Roche Bros. Supermarkets, Inc.*, 448 Mass. 780, 863 N.E.2d 1276, 1283 (2007). That is, the doctrine may arise where the negligent actions of third party are foreseeable. Here, there is no allegation that any third party created the dangerous condition.

plaintiff could get to the jury in most cases simply by presenting proof that a store's customer could have conceivably produced the hazardous condition.

*Jackson*, 840 P.2d at 470 (quoting *Chiara v. Fry's Food Stores of Ariz., Inc.*, 152 Ariz. 398, 733 P.2d 283, 285–86 (1987)).

The court finds that the proposed First Amended Complaint does not resolve the issue. The new complaint does abandon the "mode of operations" theory as a separate Count 2 claim for relief, but then attempts to preserve the theory by tucking into Count 1's claim for Premises Liability the assertion that "Defendant QT implemented a mode of operation in which patrons serve themselves as it relates to use of QT's air compressor." (Paragraph 15). She also observes in a footnote to her Reply that "[w]hile Plaintiff has not, and does not wish to pursue sanctions at this time, Plaintiff believes that QT's continued efforts to prohibit Plaintiff from pleading an obviously viable cause of action … warrant a Motion for Sanctions." (Dkt. 16, at 2 n. 1).

This veiled threat carries little weight because the mode of operations theory is obviously *not* viable in the present case. The theory "applies only where plaintiff's injuries are caused by a dangerous condition created by a third party, and not by the proprietor." *Goeken v. Wal-Mart Stores, Inc.*, No. 99-4191-SAC, 2002 WL 1334855, at *4 (D. Kan. May 16, 2002). The dangerous condition here was not created by a third party, but (allegedly) by permanent conditions created by the defendant. Reference to a "mode of operations" in the proposed amended fails to address this issue and simply creates the potential for future confusion. Accordingly, the court denies

4

leave to file the proposed amended complaint and grants defendant's motion to dismiss Count 1 of the original Petition.

IT IS SO ORDERED this day of January, 2020, that the Plaintiff's Motion for Leave (Dkt. 13) is denied; Defendant's Motion for Judgment on the Pleadings (Dkt. 6) is granted.

s/ Judge J. Thomas Marten

J. Thomas Marten, Judge